UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,

        Appellant,

    v.

LAURA YVONNE KELLY,

        Appellee.

Case No. C11-1263RSL

ORDER REVERSING DECISION
OF THE BANKRUPTCY COURT

This matter comes before the Court on appellant Educational Credit Management Corporation's appeal from the judgment of the Honorable Marc L. Barreca, United States Bankruptcy Judge, discharging a substantial portion of Laura Yvonne Kelly's student loan debt. The Court, acting in an appellate capacity, reviews the bankruptcy court's legal conclusions *de novo* and its factual determinations for clear error. In re Olshan, 356 F.3d 1078, 1083 (9th Cir. 2004). Mixed questions of law and fact are reviewed *de novo*. Banks v. Gill Distribution Centers, Inc., 263 F.3d 862, 867 (9th Cir. 2001).

**BACKGROUND**

Ms. Kelly is a single, 45 year old woman with no dependants and no diagnosed medical conditions. Bankruptcy Record, Case No. 10-1681MLB ("BR"), Dkt. # 23 at ¶ 3 and ¶ 9. She is employed full-time as an administrative assistant with the City of Seattle. Id. at ¶ 4. Her adjusted gross income for 2010 was $47,159. Id. at ¶ 5. She takes home $2,973 per month after automatic deductions are made for taxes, union dues, and retirement. BR, Dkt. # 41 at 6 and 65.

ORDER REVERSING DECISION OF
THE BANKRUPTCY COURT - 1

Ms. Kelly earned a political science degree from Seattle University in 1992. She funded her education with a series of student loans, originally totaling $24,463. Dkt. # 23 at ¶ 12. After graduation, Ms. Kelly was earning less than $15,000 a year. She stopped making payments on her student loans in 1996. With the addition of statutory collection costs and interest, Ms. Kelly now owes $105,253.59 on her student loans. Her most recent monthly loan payment was $1067. Ms. Kelly is, however, eligible for a number of loan consolidation and repayment options through the Department of Education's William D. Ford Program, including the Public Service Loan Forgiveness program ("PSLF"). Based on her adjusted gross income and her family size, Ms. Kelly's monthly student loan payment would be reduced to $386.43 under the PSLF with a complete discharge of any remaining balance after ten years of payments.

Between June 2006 and January 2007, plaintiff was making payments of $550 per month toward her student loans. Dkt. # 42 at 75-76. In 2007, Ms. Kelly was paying rent of less than $900 per month, she was paying $331.46 per month towards her student loan debt, and she bought a $14,000 car with monthly payments of $268. Dkt. # 42 at 25-27. During the pendency of her bankruptcy proceeding, Ms. Kelly paid $356 per month into the Trustee's account.

Ms. Kelly filed for bankruptcy protection under Chapter 13 of the bankruptcy code on March 10, 2008, and a discharge was issued in June 2011. In re Laura Yvonne Kelly, C08-11368MLB (B.R. W.D. Wash.). She filed an adversary proceeding seeking discharge of her student loan debt in November 2010, claiming undue hardship under 11 U.S.C. § 523(a)(8). The bankruptcy court concluded that Ms. Kelly met all the requirements of undue hardship and discharged all but $21,706.61 of the student loan debt, to be paid at $250 per month over nine years. Educational Credit Management Corporation ("ECMC") timely appealed that decision and elected to have the appeal heard by this court pursuant to 28 U.S.C. § 158(c)(1).

## DISCUSSION

In order to obtain a discharge of student loan debt, the debtor must show that the failure to discharge the debt "will impose an undue hardship on the debtor and the debtor's

dependents." 11 U.S.C. § 523(a)(8). To show that repayment will impose an "undue hardship," the debtor must prove (1) that she cannot maintain a "minimal" standard of living if forced to repay the loans, (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period, and (3) that the debtor has made good faith efforts to repay the loans. United Student Aid Funds, Inc. v. Pena, 155 F.3d 1108, 1111-12 (9th Cir. 1998) (adopting the three part test set forth in Brunner v. N.Y. State Higher Educ. Servs. Corp., 831 F.2d 395, 396 (2nd Cir. 1987)). "[G]arden-variety hardship" is insufficient to excuse repayment (Rifino v. U.S., 245 F.3d 1083, 1087 (9th Cir. 2001)): Congress clearly intended "to make the discharge of student loans more difficult than that of other nonexcepted debt" (Brunner, 831 F.2d at 396). The debtor bears the burden of proving each prong of the Brunner test by a preponderance of the evidence. Rifino, 245 F.3d at 1088.

**A. "Minimal" Standard of Living**

To satisfy the first prong of the Brunner test, a debtor must prove more than "tight finances," but need not show "utter hopelessness." United Student Aid Funds, Inc. v. Nascimento, 241 B.R. 440, 445 (9th Cir. B.A.P. 1999). A "minimal" standard of living "does not equate to a middle class standard of living" (Educ. Credit Mgmt. Corp. v. Howe, 319 B.R. 886, 889 (9th Cir. B.A.P. 2005)), nor does it necessarily equate to the debtor's present or preferred standard of living (Naranjo v. Educ. Credit Mgmt. Corp., 261 B.R. 248, 255 (Bankr. E.D. Cal. 2001)). Rather, the Court considers whether the debtor could increase earnings or decrease expenses so that she could make loan payments and still provide for life's necessities.

ECMC argues that the loan payments at issue under this prong of the Brunner test are the $386.43 per month that would be required of Ms. Kelly under the PSLF program. Such an analysis would not, however, comport with the realities that were actually facing Ms. Kelly at the time of trial. In June 2011, the monthly repayment amount was $1067. Ms. Kelly had neither applied for nor been accepted into the PSLF program, and the Court will not base its analysis on hypothetical facts. The issue to be decided under the first prong, therefore, is

whether repayment of the loan as then structured would reduce Ms. Kelly's standard of living to something below an acceptable minimum.

This Court "must accept the bankruptcy court's findings of fact unless upon review [it] is left with the definite and firm conviction that a mistake has been committed." In re Jan Weilert RV, Inc., 315 F.3d 1192, 1196 (9th Cir. 2003). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). Where there are two permissible views of the evidence, the bankruptcy court's choice between them will not be disturbed. In re Rifino, 245 F.3d 1083, 1086-87 (9th Cir. 2001). While the Court is convinced that at least $500 per month could easily be squeezed from Ms. Kelly's expenditures without approaching a "minimal" standard of living,[1] the bankruptcy court's finding that she could not pay $1067 per month under the first prong of the Brunner test is a permissible conclusion from the evidence and will not be disturbed.

**B. Persistence of Debtor's State of Affairs**

In applying the second prong of Brunner, "the determinative question is whether the debtor's inability to pay will, given all we know about the salient features of her existence, persist throughout a substantial portion of the loan's repayment period." Educ. Credit Mgmt. Corp. v. Nys, 446 F.3d 938, 946 (9th Cir. 2006). While there is every reason to presume that Ms. Kelly's annual income will continue to increase on the same trajectory it has taken since beginning her employment with the City of Seattle and that her car-related expenses will drop by

---

[1] Cost-cutting measures to reduce the amounts paid for rent ($1050 per month), food ($500 per month), clothing ($150-200 per month), toiletries and housewares ($145 per month), auto (approximately $500 per month), and hairdresser ($120 per month) would still leave Ms. Kelly with all the necessities of life as well as some extras. As recently as 2007, Ms. Kelly was earning $4,846 less than she did in 2010 and was still able to find $331.46 in her monthly budget to pay towards student loans and another $268 per month to buy a car. Since that time, Ms. Kelly has allowed her expenses to increase (most notably her rent and transportation costs) such that she no longer has any income budgeted towards student loans.

$268 when her auto loan is paid off in 2013, there is ample evidence to support the bankruptcy court's conclusion that her age, education, and employment background mean that her current inability to pay $1067 per month will persist for a substantial portion of the loan repayment period.

**C. Good Faith Efforts to Repay the Loans**

Whether a debtor has made a good faith effort to repay his loans can depend on various factors, including the debtor's efforts to maximize income and minimize expenses. In re Mason, 464 F.3d 878, 884 (9th Cir. 2006). The Ninth Circuit has also held that a debtor's failure to negotiate a repayment plan, while not conclusive, at least raises an inference that the debtor has not acted in good faith. Id. at 884-85. The bankruptcy court found that Ms. Kelly maximized her income and excused her acknowledged failures to minimize expenses and/or renegotiate her loan payments under the theory that any cost savings would not amount to the $386.43 per month that would be required of Ms. Kelly under the PSLF program.

Having reviewed the record in its entirety, this Court "is left with the definite and firm conviction that a mistake has been committed." In re Jan Weilert RV, Inc., 315 F.3d at 1196. The issue here is whether Ms. Kelly made good faith efforts to repay her loans. She need not successfully pay off her debt, but she at least has to make some effort to satisfy the creditors who paid for her college education. In this case, Ms. Kelly neither minimized her expenses nor bothered to apply for an available loan modification program. Ms. Kelly knew of the PSLF program, that she was eligible, that her monthly payments would be cut by almost 64%, and that the payment term was ten years. Nevertheless, she declined to apply for the program, apparently on the theory that she would be unable to make the monthly payments of $386.43. There is no evidence that Ms. Kelly seriously considered the loan modification program or attempted to rework her monthly budget to cover the reduced debt payments. In short, Ms. Kelly made no effort, much less a good faith effort, to repay her loans.

In addition, the bankruptcy court's finding that "[e]ven reducing it down to the

$386.43 under the Ford program that was submitted, . . . [Ms. Kelly] cannot afford that and maintain a minimal standard of living" is unsupported by analysis or fact. BR, Dkt. # 43 at 13. The bankruptcy court recognizes that Ms. Kelly could undoubtedly spend less per month, but then concludes that any savings would not amount to $386.43. This conclusion is not supported by the record. As discussed above, there are a number of large line items in Ms. Kelly's budget that could be trimmed without depriving her of a minimal standard of living. Her list of expenditures includes a number of gratuitous items that cannot, by any stretch of the imagination, be considered necessities and significant monthly payments for services and goods that are inconsistent with a good faith attempt to repay her loans. Ms. Kelly's expenditures seem to be capped only by her income, with virtually no regard for the outstanding student loan debt. Since 2007, Ms. Kelly has increased her rent by $150 per month and her transportation costs by approximately $500 per month, money which could have gone toward her student loans. Her failure to minimize expenses combined with her failure to apply for the loan modification program evince a lack of good faith that precludes a finding in her favor on prong three of the Brunner test.

## CONCLUSION

For all of the foregoing reasons, the Court concludes that Ms. Kelly failed to meet her burden of proof under the third prong of the Brunner test. The Court REVERSES the decision of the bankruptcy court and holds Ms. Kelly's student debt non-dischargeable.

Dated this 20th day of April, 2012.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge